**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| JOSE LUIS MUNOZ ZABALA,<br><br>Petitioner,<br><br>v.<br><br>MARK BOWEN, et al.,<br><br>Respondents. | Case No. 5:26-cv-00918-DFM<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

Petitioner Jose Luis Munoz Zabala ("Petitioner") is a Venezuelan national proceeding pro se. He has been in immigration detention since June 4, 2025. He seeks a writ of habeas corpus under 28 U.S.C. § 2241 ordering his release. See Dkt. 1 ("Petition"). He argues that U.S. Immigration and Customs Enforcement ("ICE") re-arrested him without notice or a hearing after he had spent nearly two years complying with the conditions of his 2023 release on recognizance. He also challenges the bond hearing he later received and the length of his detention.

For the reasons set forth below, the Petition is **DENIED** and this action is **DISMISSED** without prejudice.

## II. BACKGROUND

### A. Entry, Release, and Original Removal Proceedings

A Border Patrol record states that Petitioner was encountered in Del Rio, Texas on June 1, 2023, "issued a notice to appear and released on his own recognizance." Dkt. 45 ("Pet. Supp. Br.") at 16 (Form I-213 continuation page). A Notice to Appear dated June 5, 2023 placed him in removal proceedings under section 240 of the Immigration and Nationality Act ("INA"). See id. at 6 ("NTA"). The NTA charged him as inadmissible under INA § 212(a)(6)(A)(i), as a noncitizen present without admission or parole. Id. It checked the box for a noncitizen "present in the United States who has not been admitted or paroled," not the box for an "arriving alien." Id.

On June 6, 2023, the Department of Homeland Security ("DHS") issued Petitioner an Order of Release on Recognizance (Form I-220A). See Dkt. 14 at 17 ("Release Order"). The Release Order recites that Petitioner had "been arrested and placed in removal proceedings." Id. It states that he was released "[i]n accordance with section 236 of the Immigration and Nationality Act." Id. Petitioner signed an acknowledgment, interpreted in Spanish, that DHS "may revoke my release without further notice" if he did not comply with various conditions. Id. The order's cancellation section is blank. See id.

Petitioner filed an asylum application with the immigration court in Salt Lake City, Utah, in September 2023. See Pet. Supp. Br. at 15. The court later set a master calendar hearing for December 9, 2025. See id. at 14.

United States Citizenship and Immigration Services ("USCIS") granted Petitioner Temporary Protected Status ("TPS") valid from May 14, 2024 to April 2, 2025. See Dkt. 43-1 at 1. He filed a re-registration application on May 14, 2025. See Dkt. 43-2 at 1. On October 16, 2025, USCIS withdrew his TPS. See Dkt. 43-3. It cited serious reasons to believe he had committed a serious nonpolitical crime outside of the United States before arriving, and it cited

"material misrepresentations" in his applications. See id. at 3-5. Petitioner disputes the records on which USCIS relied and contends that his TPS was denied on February 8, 2026. See Pet. Supp. Br. at 1, 4.

**B. Re-Detention, Credible-Fear Proceedings, and Bond Proceedings**

ICE arrested Petitioner at his residence in Saratoga Springs, Utah, on June 4, 2025. See Pet. Supp. Br. at 16. Petitioner describes the arrest as forcible and warrantless and states that he was injured. See Dkt. 14 at 2-4.

The same day, an immigration officer issued a Notice and Order of Expedited Removal (Form I-860). See Petition at 37-38. It charged Petitioner as inadmissible under INA § 212(a)(7)(A)(i)(I). See id. An asylum officer found that Petitioner lacked a credible fear of persecution or torture. See id. at 33. On July 28, 2025, an IJ vacated that negative determination. See Dkt. 34 ("Answer"), Ex. A, Dkt. 34-1 at 2-3. Respondents acknowledge that the 2023 NTA "apparently . . . was not dismissed" and that "Petitioner was allowed to seek asylum under the 2023 NTA." Dkt. 43 ("Respondents' Second Supp. Br.") at 3.

A bond hearing under Rodriguez v. Robbins was scheduled for December 8, 2025 and rescheduled for January 28, 2026. See Answer, Exs. D-E, Dkt. 34-4 at 2; Dkt. 34-5 at 2. At both settings the bond request was withdrawn without prejudice at the request of Petitioner's then-counsel. See id.

**C. The Removal Order, ICE Custody Notices, and Ninth Circuit Petition**

On February 5, 2026, an IJ found Petitioner inadmissible under INA § 212(a)(6)(A)(i), the charge in the 2023 NTA. See Answer, Ex. B ("Removal Order") at 2. The IJ denied asylum, withholding of removal, and protection under the Convention Against Torture. See id. The IJ ordered Petitioner removed to Colombia or, in the alternative, to Venezuela. See id. at 4. The order records that both parties waived appeal. See id. at 5.

Petitioner nonetheless filed a notice of appeal, which the Board of Immigration Appeals ("BIA") received on March 9, 2026. See Answer, Ex. C, Dkt. 34-3. On June 16, 2026, the BIA summarily dismissed the appeal. See Dkt. 39-1. It concluded that Petitioner had not argued that his waiver was unknowing or unintelligent, and that he had not complied with the procedural requirements for an ineffective-assistance claim. See id. It held that the IJ's decision "became administratively final upon the respondent's waiver." See id.

ICE served Petitioner with two Warnings for Failure to Depart (Form I-229(a)). See Dkt. 37 ("Traverse") at 17, 19. One lists the date the order became final as February 5, 2026; the other lists April 23, 2026. See id. ICE also notified him that his custody status would be reviewed on or about April 11, 2026. See id. at 21.

On June 29, 2026, Petitioner filed a petition for review and a motion for a stay of removal in the Ninth Circuit. See Munoz-Zabala v. Blanche, No. 26-4134 (9th Cir.), Dkts. 1-2. Under the Ninth Circuit's General Order 6.4, a temporary stay of removal took effect "until further order of the court." Id., Dkt. 4. The government's response to the stay motion is due October 9, 2026. See id., Dkt. 16. Briefing is stayed pending resolution of Petitioner's motion for appointment of counsel. See id.

**D. This Action**

On March 26, 2026, the previously assigned District Judge granted a temporary restraining order in part. See Dkt. 15 ("TRO Order"). Among other things, the TRO Order required that Petitioner receive an individualized bond hearing under 8 U.S.C. § 1226(a) within seven (7) days, with a meaningful opportunity to be heard before a neutral arbiter, the opportunity to be represented by counsel, and the opportunity to present evidence. See id. at 4-5. The TRO Order did not specify which party bore the burden of proof at the hearing.

The bond hearing convened on March 31, 2026. See Answer, Ex. F, Dkt. 34-6. The IJ continued it to April 7 because Petitioner "did not provide any supporting documentation" and "needs more time to get that in order, including a copy for DHS." Id. Respondents filed that order with their response to the order to show cause on April 2. See Dkt. 16 at 2; Dkt. 16-1.

On April 7, 2026, the IJ denied bond. See Answer, Ex. G ("Bond Order"), Dkt. 34-7. The IJ found that DHS had "established by clear and convincing evidence that [Petitioner's] release would pose such a significant flight risk that no amount of bond and/or alternatives to detention would be appropriate." Id. The Bond Order makes no dangerousness finding. See id. It records that both parties reserved appeal, with an appeal due date of May 7, 2026. See id. at 3. Respondents served the Bond Order on Petitioner on April 9. See Dkt. 18. The record does not show that either party appealed.

Petitioner consented to magistrate judge jurisdiction, and the case was reassigned to the undersigned for all purposes. See Dkts. 27, 29, 30. The Court denied a renewed request for counsel and ordered a return. See Dkt. 32. Respondents lodged a recording of the April 7 hearing (Dkt. 33) and filed their Answer. Petitioner filed his Traverse. At the Court's direction, the parties filed supplemental briefs addressing the finality of the removal order, the status of Petitioner's proceedings, and the statute presently governing his detention. See Dkts. 38-43, 45.

## III. DISCUSSION

A district court may grant a writ of habeas corpus to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). That authority extends to noncitizens challenging the lawfulness of their immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001).

Section 1226(e) bars review of discretionary custody judgments. It does not bar review of constitutional claims or questions of law. See Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011). The Court may review mixed questions of law and fact but does not reweigh the evidence before the IJ. See Martinez v. Clark, 124 F.4th 775, 783-85 (9th Cir. 2024).

## A. Petitioner's Present Detention is Lawful

Habeas corpus asks whether a petitioner can lawfully be detained now. It "is not like an action to recover damages for an unlawful arrest or commitment." United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 158 (1923). "[I]f sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." Id.

The Court therefore begins with the present basis for Petitioner's custody, which includes whether Respondents complied with the TRO Order. It then addresses the June 2025 re-detention and Petitioner's remaining theories.

### 1. Petitioner's Removal Order Is Final

An IJ's removal order becomes final upon the respondent's waiver of appeal. See 8 C.F.R. § 1241.1(b). The IJ's February 5, 2026 order records Petitioner's waiver. See Removal Order at 5. The BIA held that the order became administratively final upon that waiver. See Dkt. 39-1.

The Answer suggested that Petitioner "is not subject to a final order of removal because he is appealing it." Answer at 12. That suggestion does not account for the waiver, and Respondents' later filings abandon it. See Dkt. 39 at 2. An I-229(a) form listing April 23, 2026 does not alter the date on which the order became final. See Traverse at 19.

Detention after a removal order becomes administratively final is ordinarily governed by 8 U.S.C. § 1231. See Johnson v. Guzman Chavez, 594 U.S. 523, 533-34, 544 (2021).

### 2. Three Statutes Could Govern

Three statutes could authorize Petitioner's present detention: § 1226(a), § 1225(b)(1)(B)(ii), and § 1231(a)(6). Which one applies depends on when the removal period began. That period begins on the latest of three dates: (1) the date the removal order becomes administratively final; (2) if the removal order is judicially reviewed and a court orders a stay of removal, "the date of the court's final order"; or (3) the date of release from non-immigration detention. See 8 U.S.C. § 1231(a)(1)(B).

If the removal period began on February 5, 2026, it ran until approximately May 6, 2026, and Petitioner's detention thereafter falls under § 1231(a)(6). Petitioner's June 29, 2026 petition for review and the resulting temporary stay, however, raise the possibility that the removal period has not yet begun.

If so, § 1226(a) may govern. A stay entered while the Ninth Circuit reviews a removal order delays the removal period, and detention during that review rests on § 1226(a). See Prieto-Romero v. Clark, 534 F.3d 1053, 1059-61 (9th Cir. 2008). A stay entered on review of a collateral ruling does not. See id. at 1060 n.6; Diouf v. Mukasey, 542 F.3d 1222, 1229-30 (9th Cir. 2008) (stays pending review of reopening denials "did not entail judicial review of a removal order").

Petitioner's petition for review falls between those examples. It challenges the BIA's summary dismissal of an appeal filed after he had waived appeal from an order that was already final.

A further question is whether a temporary stay arising automatically under General Order 6.4 is a stay that a "court orders." The Ninth Circuit has not resolved it. See Avilez v. Garland, 69 F.4th 525, 537 n.16 (9th Cir. 2023) ("Neither party raised any argument that Section 1231(a) applies, whether

because the stay in this case was a temporary stay, or for any other reason. So we do not consider that possibility.”).

Respondents contend that a third statute, § 1225(b)(1)(B)(ii), governs because Petitioner remains an expedited-removal detainee. See Respondents' Second Supp. Br. at 3-4. Section 1225(b)(1) mandates detention of applicants for admission “until certain proceedings have concluded.” Jennings v. Rodriguez, 583 U.S. 281, 297 (2018).

The Court need not decide which statute governs. As explained below, Petitioner's present custody would be lawful under each.

**3. Under § 1226(a), Petitioner Received the Required Hearing**

Section 1226(a) authorizes detention pending a decision on removal. The implementing regulations place the burden on the detainee to show that release is warranted. See 8 C.F.R. § 1236.1(c)(8). The Ninth Circuit has held that § 1226(a)'s procedures satisfy due process. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1213 (9th Cir. 2022). It has further held that due process does not require a second bond hearing at which the government bears the burden by clear and convincing evidence. See id. at 1210-13. It has not foreclosed all as-applied challenges to § 1226(a)'s procedures. See id. at 1213.

Petitioner received more than § 1226(a) requires. Under the TRO Order, he received an individualized hearing at which DHS carried a clear-and-convincing burden. See Bond Order at 2.

Petitioner contends the hearing was a “sham” because the IJ placed the burden of proof on him, no evidence supported the flight-risk finding, and the decision rests on a single conclusory sentence. See Traverse at 7-8, 13-14. Petitioner's first argument is whether Petitioner received the hearing the TRO Order required. His second argument is whether the evidence supported the IJ's flight-risk finding and whether the IJ adequately explained it. That question challenges the IJ's evaluation of the record.

The Court retains authority to determine whether its own order was obeyed. See Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011). The Court has reviewed the recording of the April 7 hearing. See Dkt. 33. The recording shows that the IJ placed the burden of proof on DHS and applied the clear-and-convincing standard. It shows that Petitioner was given a meaningful opportunity to be heard, to be represented by counsel, and to present evidence. It also shows that DHS presented evidence, which the IJ considered before ruling.

The written Bond Order is brief, but the recording reflects the hearing the TRO Order required. Petitioner's contention that the IJ placed the burden on him is not borne out by the record of the hearing itself.

Petitioner's challenges to the sufficiency of the evidence and the adequacy of the IJ's explanation concern the IJ's evaluation of the record. A noncitizen who receives a bond hearing before an IJ ordinarily must appeal to the BIA before seeking habeas relief. See Leonardo, 646 F.3d at 1159-60; 8 C.F.R. § 1236.1(d)(3)(i). Where the petitioner has not done so and exhaustion is not excused, the district court "ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." Leonardo, 646 F.3d at 1160.

Exhaustion here is prudential. It may be excused where administrative remedies are inadequate or not efficacious, where pursuing them would be futile, where irreparable injury would result, or where the administrative proceedings would be void. See Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004). "The key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." Liu v. Waters, 55 F.3d 421, 426 (9th Cir. 1995).

A claim that the IJ's finding lacked evidentiary support or was inadequately explained is the kind of error the BIA can correct. Petitioner

reserved appeal, and the appeal was due May 7, 2026. See Bond Order at 3. The only BIA appeal in the record concerned the Removal Order. See Dkt. 39-1.

Petitioner argues that exhaustion is futile because immigration courts "have repeatedly declined [j]urisdiction." Dkt. 14 at 8. That argument predates the April 7 hearing, at which the IJ exercised jurisdiction and decided the merits. Petitioner's difficulty obtaining counsel does not show that a BIA appeal was unavailable. He filed a BIA appeal of the Removal Order himself. See Dkt. 34-3 at 2. His argument that a bond hearing cannot address the lawfulness of his re-arrest concerns a different claim, addressed below.

Petitioner also invokes the irreparable-injury exception. He points to the harm continued detention causes him and his children, including the loss of his business and his family's emotional and economic hardship. See Petition at 4; Traverse at 14-15. The Court does not doubt those hardships. But they are the ordinary consequences of detention, and they would be present in nearly every case in which a detainee does not appeal a bond decision. They do not show that a BIA appeal, which Petitioner reserved and which remained available until May 7, 2026, would have been inadequate to address the errors he now asserts. The Court declines to excuse exhaustion on that basis.

The Court therefore dismisses without prejudice, for failure to exhaust, Petitioner's challenges to the IJ's evaluation of the evidence and explanation of the bond decision. To the extent an IJ retains custody jurisdiction over Petitioner, he may seek a new custody redetermination upon a showing that his circumstances have materially changed. See 8 C.F.R. § 1003.19(e).

**4. Under § 1225(b)(1)(B)(ii), Detention is Mandatory**

If Petitioner remains detained under § 1225(b)(1)(B)(ii), as Respondents contend, detention is mandatory until the applicable proceedings conclude, and neither § 1225(b)(1) nor § 1225(b)(2) "says anything whatsoever about

bond hearings." Jennings, 583 U.S. at 297. Release is available only through parole under § 1182(d)(5)(A). See id. at 300. Jennings resolved only the statutory question; it did not decide whether prolonged detention under § 1225(b) may violate due process. See id. at 312. The Court need not decide that question. Whatever additional process the Constitution might require for a detainee in Petitioner's position, Petitioner received an individualized hearing before a neutral IJ at which DHS bore a clear-and-convincing burden. He identifies no further procedure that due process would require. The Court does not decide whether Petitioner was lawfully placed in expedited removal. As explained below, the order under which he is held is not the expedited-removal order. His custody would be lawful under § 1226(a) or § 1231 in any event.

**5. Under § 1231(a)(6), Continued Detention is Authorized**

If the removal period has expired, § 1231(a)(6) permits continued detention of a noncitizen "ordered removed who is inadmissible under section 1182." 8 U.S.C. § 1231(a)(6). Petitioner was ordered removed as inadmissible under § 1182(a)(6)(A)(i). See Removal Order at 2. His detention under § 1231(a)(6) would be lawful unless it exceeds the period reasonably necessary to effect removal. The Court addresses that limit below.

**B. The June 2025 Re-Detention Does Not Entitle Petitioner to Release**

Petitioner's principal claim is that ICE revoked his release after nearly two years of compliance without notice or a hearing. He contends this violated the Due Process Clause, the Administrative Procedure Act ("APA"), the Accardi doctrine, and 8 C.F.R. § 212.5(e). See Traverse at 5-6.

Respondents did not address this claim directly in their Answer. Petitioner asks the Court to treat that silence as consent. See Pet. Supp. Br. at 1-2 (citing L.R. 7-12). A respondent's failure to answer a habeas claim, however, does not entitle the petitioner to relief by default. See Gordon v. Duran, 895 F.2d 610, 612 (9th Cir. 1990).

### 1. The Release Was Under § 1226, Not § 1182(d)(5)

The Release Order states that Petitioner was released "[i]n accordance with section 236 of the Immigration and Nationality Act," which is 8 U.S.C. § 1226. See Release Order. Release on recognizance under § 1226(a) is a form of conditional parole. It is distinct from parole into the United States under § 1182(d)(5)(A). See Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1115-16 (9th Cir. 2007).

The parole-termination regulation on which Petitioner relies, 8 C.F.R. § 212.5(e), implements § 1182(d)(5). It did not govern revocation of a release under § 1226. Section 1226(b) authorizes revocation of a release under § 1226(a) and rearrest. The Release Order itself told Petitioner that his release could be revoked.

### 2. Present Custody Rests on Independent Grounds

The Court accepts that a person released from custody has an interest in continued conditional liberty that the Due Process Clause protects. See Morrissey v. Brewer, 408 U.S. 471, 482 (1972). The Court need not decide whether the June 2025 re-arrest satisfied due process. Even if it did not, the defect would not entitle Petitioner to release now, for two reasons.

First, as explained above, Petitioner's present custody rests on grounds independent of the re-arrest: a final order of removal, and a determination by a neutral IJ, under this Court's order, that DHS proved flight risk by clear and convincing evidence. When "sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest." Bilokumsky, 263 U.S. at 158.

Second, Petitioner has already received the process that similar cases require: a hearing before a neutral decisionmaker at which the government bears a clear-and-convincing burden. That hearing came after his re-arrest rather than before it. Releasing Petitioner so that he could be re-detained after

an identical hearing would provide no additional protection against an erroneous deprivation. Due process weighs "the private interest," "the risk of an erroneous deprivation," and "the Government's interest." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). With a neutral flight-risk finding already made and a final removal order entered, those factors do not support release.

**3. The Expedited-Removal Questions Are Not Material**

The same reasoning disposes of Petitioner's challenge to his placement in expedited removal. See Traverse at 2-5. The record raises several questions, such as whether expedited removal was available while his section 240 proceedings remained pending; and whether he had been continuously present for two years on June 4, 2025. See 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

But the order under which Petitioner is now held is not the expedited-removal order. The IJ vacated the negative credible-fear determination. The Removal Order sustained the charge in the 2023 NTA, not the I-860's charge under § 212(a)(7)(A)(i)(I). Compare Removal Order at 2, with Petition at 37-38. Whether the expedited-removal process was lawfully invoked in June 2025 does not affect the lawfulness of Petitioner's present custody, and the Court does not decide it.

**4. The Arrest Allegations**

Petitioner also describes a warrantless, forcible arrest in which he was injured and then denied medical care. See Dkt. 14 at 2-4; Traverse at 3. However, these allegations do not support release from custody that now rests on independent lawful grounds. See Bilokumsky, 263 U.S. at 158. This order does not address whether they could support relief in another proceeding.

**C. Petitioner Has Not Shown that Removal is Unlikely**

To the extent Petitioner is detained under § 1231(a)(6), Zadvydas construes that provision to permit detention only for "a period reasonably

necessary to bring about that alien's removal." 533 U.S. at 689. Six months is presumptively reasonable. See id. at 701.

After that period, a noncitizen who "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" is entitled to release unless the government rebuts that showing. Id. If measured from February 5, 2026, the presumptive period expired in early August 2026.

Petitioner argued that that there were "no travel documents" and "no ongoing removal efforts." Petition at 4. But Petitioner's own later filings report that ICE officers told him they were working on his deportation and repeatedly warned that he would be deported. See Traverse at 10; Dkt. 42 at 2. Otherwise, Petitioner's general allegations of delay resulted from his own pursuit of review. Such delay does not make removal unforeseeable. A petitioner relying on that delay must show that he "would be unremovable even if the government defeated his petition for review." Diouf, 542 F.3d at 1233 (citing Prieto-Romero, 534 F.3d at 1063). It is the Ninth Circuit's temporary stay, entered on Petitioner's own motion, that now prevents his removal.

Petitioner has identified no other obstacle, such as a receiving country's refusal to accept him, to his removal to Colombia or Venezuela. Because he has not made the initial showing Zadvydas requires, the burden does not shift to Respondents to show that removal is likely.

Petitioner also argues that his prolonged detention requires a bond hearing at which the government bears the burden. See Petition at 4. Section 1231(a)(6) creates no statutory entitlement to such a hearing. See Johnson v. Arteaga-Martinez, 596 U.S. 573, 581 (2022). The Supreme Court left open whether prolonged detention under that provision may require additional process as a constitutional matter. See id. at 583. Petitioner's constitutional claim fails on this record because he has already received the hearing he seeks.

On April 7, 2026, an IJ found, under a clear-and-convincing burden placed on DHS, that he poses a flight risk. He identifies no further procedure that due process would require.

The claim is denied without prejudice. If the Ninth Circuit resolves Petitioner's petition for review and he remains detained without a significant likelihood of removal in the reasonably foreseeable future, he may file a new petition.

**D. Temporary Protected Status**

A noncitizen granted TPS "shall not be detained . . . on the basis of the alien's immigration status in the United States." 8 U.S.C. § 1254a(d)(4). Petitioner contends that his TPS remained active when he was re-arrested. See Pet. Supp. Br. at 1.

The Court need not decide Petitioner's TPS status on June 4, 2025. The question for present custody is whether Petitioner holds TPS now, such that § 1254a(d)(4) would bar his detention on the basis of his immigration status. The record does not establish that he does. The only TPS approval in the record was valid through April 2, 2025. See Dkt. 43-1 at 1. His May 14, 2025 re-registration application produced a receipt, not a grant. See Dkt. 43-2 at 1. On October 16, 2025, USCIS issued a decision withdrawing his TPS. See Dkt. 43-3 at 1, 5. Petitioner disputes that date and the records on which USCIS relied, but he does not contend that he holds TPS today. See Pet. Supp. Br. at 1, 4. Petitioner himself states that his TPS was denied on February 8, 2026. See id. at 1.

Petitioner's objections to the October 16 decision do not change that conclusion. A withdrawal of TPS must be in writing and served by personal service. See 8 C.F.R. § 244.14(b)(1). Personal service includes mailing a copy by certified or registered mail, return receipt requested, to the person's last known address. 8 C.F.R. § 103.8(a)(2)(iv). The decision appears to be

addressed to Petitioner's Utah residence, see Dkt. 43-3 at 1, but that address alone does not establish that service was invalid, and Petitioner does not contend that he never received a decision. Nor would a service defect, on this record, establish a current grant of TPS that by its terms ran through April 2, 2025, and that Petitioner acknowledges was later denied.

A request to adjudicate Petitioner's eligibility for TPS is distinct from a claim that existing TPS bars his detention. The USCIS decision advised Petitioner that he retains the right to a de novo determination of his TPS eligibility in removal proceedings. See Dkt. 43-3 at 5-6. This action is not the vehicle for that determination. Because the record does not establish that Petitioner currently holds TPS, § 1254a(d)(4) does not make his present custody unlawful.

### E. Petitioner's APA and *Accardi* Theories

Petitioner invokes the APA and the Accardi doctrine. See Traverse at 2, 5-6; Petition at 3. Accardi requires an agency to follow its own binding procedures. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 267-68 (1954).

The only regulation Petitioner identifies is 8 C.F.R. § 212.5(e), which does not govern a release under § 1226. The Petition also alleges that ICE failed to conduct a parole review after 90 days of detention, as required by "DHS policy." Petition at 3. Petitioner does not identify that policy or show that it is binding. The post-order custody-review regulation requires a records review before the 90-day removal period expires for certain noncitizens under a final order; it does not require a review 90 days after an arrest. See 8 C.F.R. § 241.4(h)(1), (k)(1)(i). And even if a review had been missed in 2025, that omission would not entitle Petitioner to release from custody that now rests on the independent grounds described previously.

A separate custody review, approximately two months following the Removal Order, was noticed for on or about April 11, 2026. See Traverse at 21. The record does not show whether that review occurred or what it concluded. Petitioner does not contend that it failed to occur or seek relief based on it.

The APA theories fare no better. They seek the same release this habeas action seeks. Habeas provides an adequate remedy for unlawful detention. See 5 U.S.C. § 704.

These claims are denied without prejudice.

### F. Requests Directed at the Removal Order

Parts of Petitioner's filings ask the Court to revisit his asylum and protection claims, the validity of his appeal waiver, or his removal to Colombia or Venezuela. See Petition at 2; Dkt. 42 at 2. The INA channels review of removal orders to the court of appeals. See 8 U.S.C. § 1252(a)(5), (b)(9), (g); Rauda v. Jennings, 55 F.4th 773, 777 (9th Cir. 2022).

Petitioner's petition for review is pending in the Ninth Circuit. His requests for relief from the Removal Order itself are dismissed without prejudice for lack of jurisdiction. The record discloses no threatened removal to a country other than the two designated in the Removal Order. Nothing in this order affects the Ninth Circuit's stay of removal.

## IV. ORDER

For the foregoing reasons, IT IS ORDERED that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED** as follows:

a. Petitioner's claims for release based on the June 4, 2025 re-detention, the statutory basis for his detention, the procedures at the April 7, 2026 bond hearing and Respondents' compliance with the Court's March 26, 2026 Order, and his Temporary Protected Status are **DENIED**.

b. Petitioner's claim for release under Zadvydas v. Davis, 533 U.S. 678 (2001), and his claims under the Administrative Procedure Act and the Accardi doctrine are **DENIED** without prejudice.

c. Petitioner's challenges to the IJ's evaluation of the evidence and explanation of the April 7, 2026 bond determination are **DISMISSED** without prejudice for failure to exhaust administrative remedies.

d. Petitioner's requests for review of his removal order are **DISMISSED** without prejudice for lack of jurisdiction.

2. The restraint on transfer, relocation, or removal in the Court's March 26, 2026 Order (Dkt. 15) terminates upon entry of judgment. Nothing in this Order affects the stay of removal entered by the Ninth Circuit in No. 26-4134.

3. This action is **DISMISSED** without prejudice.

Date: October 2, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge